UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET ASMAR and KEN LUKATCH,

    Plaintiffs,

v.

BENCHMARK LITERACY GROUP, INC., et al.,

    Defendants.
_____/

Case No. 04-70711

Honorable Nancy G. Edmunds

**ORDER (1) GRANTING PLAINTIFF ASMAR'S MOTION FOR ENTRY OF MONEY JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT BENCHMARK LITERACY GROUP, INC. [147], (2) GRANTING PLAINTIFF LUKATCH'S MOTION FOR ENTRY OF MONEY JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS AMERICAN FINANCIAL ACCESS, INC. AND AMERICAN FINANCIAL AVENUES, INC. [146], AND (3) GRANTING PLAINTIFF ASMAR'S AND PLAINTIFF LUKATCH'S MOTIONS FOR ATTORNEY FEES**

This matter came before the Court on separate motions from each plaintiff in this case for entry of a money judgment and permanent injunction against the particular defendant who pre-charged that plaintiff for credit repair services in violation of the Credit Repair Organizations Act (the "CROA"), 15 U.S.C. § 1679b(b). This Court previously granted judgment against all defendants involved in the instant motion via its Order dated October 11, 2005 (Docket No. 98.) Plaintiff Asmar and Plaintiff Lukatch (collectively, "Plaintiffs") each request actual damages, punitive damages and reimbursement of attorney fees pursuant to the CROA and entry of a permanent injunction barring Defendants from pre-charging customers for credit repair services. The Court will first address Plaintiffs'

separate claims for actual and punitive damages, then consider attorney fees and costs collectively.

**I. Plaintiff Asmar's Motion Against Defendant Benchmark Literacy Group, Inc. ("Benchmark")**

The CROA provides that a plaintiff is entitled to recover either (1) actual damages, or (2) the amount that they paid to the credit repair organization. 15 U.S.C. § 1679g(a)(1). Such plaintiffs are also entitled to punitive damages. 15 U.S.C. § 1679g(a)(2). Here, Plaintiff Asmar requests damages of $529.00 to cover the amount she paid to Defendant Benchmark. She also requests punitive damages of $1,587.00, and Defendant Benchmark has not opposed this request.

When awarding punitive damages, the CROA instructs a court to consider the following factors:

> (1) the frequency and persistence of noncompliance by the credit repair organization;
> (2) the nature of the noncompliance;
> (3) the extent to which such noncompliance was intentional . . . .

15 U.S.C. § 1679g(b).

In the instant case, Defendants pre-charged Plaintiffs for credit repair services in direct violation of federal law, and discovery revealed that Defendants did the same thing to many hundreds of other consumers, unlawfully collecting fees that totaled well into the six figures. Based upon the findings contained in the record, the fact that Defendant Benchmark has not opposed Plaintiff Asmar's request, and the fact that this level of punitive damages represents a reasonable 3:1 ratio compared to actual damages, the Court is willing to award punitive damages as requested.

Therefore, the Court GRANTS a money judgment of $2,116.00 against Defendant Benchmark in favor of Plaintiff Asmar. This amount is reduced by $529.00 to reflect the fact that Defendant Benchmark already refunded Plaintiff Asmar's initial fee, so the net judgment is $1,587.00. Plaintiff Asmar is also entitled to post-judgment interest at the prevailing federal judgment interest rate.

Lastly, the Court GRANTS a permanent injunction against Defendant Benchmark barring it from pre-charging customers for credit repair services, as such activity is a prima facie violation of the CROA.

## II. Plaintiff Lukatch's Motion Against Defendants American Financial Access, Inc. and American Financial Avenues, Inc. (collectively, the "AFA Defendants")

Plaintiff Lukatch requests actual damages of $399.00 to cover the amount he paid to the AFA Defendants along with punitive damages of $1,200.00. Again, the AFA Defendants have not opposed this request, and the same reasons supporting an award of punitive damages to Plaintiff Asmar apply here as well. Therefore, the Court GRANTS a money judgment of $1,599.00 against the AFA Defendants in favor of Plaintiff Lukatch.[1] Plaintiff Lukatch is also entitled to post-judgment interest at the prevailing federal judgment interest rate.

Lastly, the Court GRANTS a permanent injunction against the AFA Defendants barring them from pre-charging customers for credit repair services, as such activity is a prima facie violation of the CROA.

## III. Plaintiffs' Motion for Attorney Fees and Costs

---

[1]Plaintiff Lukatch has a check from the AFA Defendants that he has not deposited, which he may use to satisfy part of the judgment.

3

A successful plaintiff suing under the CROA is also entitled to reimbursement of reasonable attorney fees and costs related to bringing the action. 15 U.S.C. § 1679g(a)(3). The total attorney fees for Plaintiffs are $182,642.50, representing 538.25 hours of work, and total costs are $3,940.51. (Docket No. 149, Ex. A.)

**A. Standard of Review - Award of Attorney Fees**

It is within the district court's discretion to set the actual amount of a reasonable attorney fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "A reasonable fee is 'one that is 'adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). In cases where a plaintiff's recovery is likely to be small, yet Congress has expressed a desire to encourage filing of such suits, the proportionality of damages recovered compared to attorney fees awarded should not be considered. *See Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality holding that proportionality is not a factor in a civil rights case brought under 42 U.S.C. § 1988); *Quaratino v. Tiffany & Co.*, 166 F.2d 422, 427 (2nd Cir. 1999) (same result in a Title VII case); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Racing*, 46 F.3d 1392, 1400 (6th Cir. 1995) (same result in an ERISA case). Rather, courts must use the lodestar method in these types of cases, which requires an analysis of a reasonable fee for the type of legal work involved and a reasonable number of hours billed to complete the work. *Reed*, 179 F.3d at 471.

The party seeking an award of attorney fees carries the burden of bringing evidence to support the asserted billing rates and hours worked. *Hensley*, 461 U.S. at 433; *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004). It is proper to calculate a reasonable billing

rate based upon current fees, particularly when the case involves litigation that was ongoing for a number of years. *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). Finally, "[t]he district court also should exclude from th[e] initial fee calculation hours that were not 'reasonably expended,'" which includes "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

### B. Reasonable Billing Rates

Plaintiffs have claimed billing rates ranging from $250-500 per hour for the four attorneys that worked on these cases at various stages. The primary attorney, responsible for slightly over 75% of the total hours billed, claims a rate of $350 per hour. (Docket No. 149, Ex. A.) In the Court's judgment, such fees appear high given this type of work and the prevailing market in Southeast Michigan. To be sure, these cases involved recalcitrant Defendants, which increased the amount of effort and diligence required of Plaintiffs' counsel. Still, the overall issues were not that novel or complex to take this case outside of the bounds of the fees typically charged for standard civil litigation services. Furthermore, Plaintiffs do not submit any evidence of comparable rates charged by other members of the bar for similar work.

In fact, the State Bar of Michigan's most recent report on average attorney fees in the Southeast Michigan and South Oakland County legal markets indicated median hourly rates of $180-190 per hour in 2003. STATE BAR OF MICHIGAN, 2003 ECONOMICS OF LAW PRACTICE 35, 38, *available at* http://www.michbar.org/pmrc/articles/0000133.pdf. These amounts were slightly more than the median rates for South Oakland County associate attorneys with five to ten years of experience--which appropriately describes counsel assigned to this case. Such rates ranged from $175-185 per hour in 2003. *Id.* at 26.

Based upon this information and Plaintiffs' failure to include any reference to the reasonable fees charged by other attorneys for comparable work, the Court finds that a reasonable hourly rate in this case is $200 per hour.

### C. Reasonable Hours Expended

The second part of the court's lodestar analysis focuses on whether Plaintiffs' claimed hours are reasonable in light of the legal services provided. A review of the detailed billing records submitted in this matter reveals that the total number of hours expended is greater than would be reasonable for the final results in this case. (Docket No. 149, Ex. B.) First of all, Plaintiffs' counsel originally brought this case as a class action but later agreed to decertify the class in favor of pursuing the individual judgments presently at bar before the Court. Thus, those hours expended related to class certification and notice issues are not reasonable in light of the final results in this case. *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 767-68 (4th Cir. 1998), *rev'd on other grounds*, 527 U.S. 1031 (1999). After reviewing the time sheets, the Court determines that 68.5 hours were related to these activities. In addition, it appears that there was some excessive billing, particularly related to preparing for hearings and drafting certain filings, and the Court will further reduce the reasonable hours figure by 59.75 hours for this reason. After these two amounts are removed, the resulting figure is 410 hours.

The lodestar calculation of reasonable hours after netting out improperly claimed amounts is not the final step. A court may still consider other factors in reducing or increasing that number to arrive at a reasonable fee. *Hensley*, 461 U.S. at 434. In comparing the instant request to other courts' awards of attorney fees under the CROA, this Court still believes that 410 hours is not a reasonable amount of time to have spent on this

case. *See Conley v. Aggeler*, No. 1:05-CV-406, 2007 WL 295230 at *1 (W.D. Mich. Jan. 25, 2007) (awarding $17,875 in attorney fees for 71.5 hours of work in a case where plaintiffs won a jury verdict for $14,000); *U.S. v. Cornerstone Wealth Corp., Inc.*, No. 3:98-CV-0601-D, 2006 WL 1524592 at *1 (N.D. Tex. June 2, 2006) (reducing the government's unopposed motion for $41,664.21 in attorney fees to $36,860.55 for 305.75 hours of work); and *Cooper v. Sunshine Recoveries, Inc.*, No. 00CIV8898LTSJCF, 2001 WL 740765 at *1 (S.D.N.Y. June 27, 2001) (reducing requested attorney fees and costs of $18,202.48 to $7,682.48 in a case primarily involving the Fair Debt Collection Practices Act, but also a claim under the CROA, that required just over 40 hours of work). The Court recognizes that Defendants' actions in defending this case increased Plaintiffs' litigation burden significantly. Still, the fact remains that the inclusion of two named plaintiffs did not double the number of reasonable hours that counsel needed to spend, as the motions filed in this case were typically the same for both named plaintiffs. Therefore, the Court concludes that the number of hours arrived at through the lodestar analysis remains too high and reduces this figure by approximately 25% to reach a reasonable number of 300 hours in this case.

### D. Attorney Fees and Costs Calculation

Based upon an hourly rate of $200 and 300 total hours spent, a reasonable attorney fee would be $60,000 for representing Plaintiffs in this case. The Court is convinced that Plaintiffs' request for costs in the amount of $3,940.51 is reasonable under the circumstances, given that Defendants' delay tactics necessitated many of the filings in this case. Therefore, the total reasonable fee and costs award to Plaintiffs' counsel, The Miller Law Firm, P.C., is $63,940.51 and the Court accordingly GRANTS Plaintiffs' motions in this

regard. Plaintiffs' counsel is entitled to post-judgment interest at the prevailing federal judgment rate on the entire amount of costs and fees awarded.

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

(1) Plaintiff Asmar's motion for money judgment is GRANTED in the amount of $1,587.00, plus post-judgment interest;

(2) Plaintiff Lukatch's motion for money judgment is GRANTED in the amount of $1,599.00, plus post-judgment interest;

(3) Plaintiffs' motions for an award of attorney fees and costs to counsel, The Miller Law Firm, P.C., are GRANTED in the amount of $63,940.51, plus post-judgment interest; and

(4) Plaintiffs' motions for permanent injunctions against Defendant Benchmark and the AFA Defendants enjoining them from pre-charging customers for credit repair services are GRANTED.

SO ORDERED.


                                        s/Nancy G. Edmunds  
                                        Nancy G. Edmunds  
                                        United States District Judge

Dated: March 28, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2007, by electronic and/or ordinary mail.

                                        s/Carol A. Hemeyer  
                                        Case Manager